**Henry J. GUZEWICZ and Eleanore G. Guzewicz, Plaintiffs,**

v.

**Richard J. EBERLE, et. al. and Stainless Enterprises of Pennsylvania, Defendants.**

**Henry J. GUZEWICZ and Eleanore G. Guzewicz, Plaintiffs,**

v.

**Richard J. EBERLE, et. al. and Stainless Enterprises of Pennsylvania, Defendants.**

Civil Action Nos. 96–4791, 96–7740.

United States District Court, E.D. Pennsylvania.

Feb. 4, 1997.

Edward I. Swichar, Eric H. Vance and Alan J. Hoffman, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for Henry J. Guzewicz and Eleanore G. Guzewicz.

William J. Brennan, Butera, Beausang, Moyer & Cohen, King of Prussia, PA, James W. Owen, James W. Owen, P.A., Wilmington, DE, for Richard J. Eberle, Robert A. Farrington, James J. Heffernen, Stainless Enterprises of Pennsylvania, Inc., Stainless Broadcasting Co., Shelley Ege, Paul Kalacznik, Marilyn Martell and Jess Rodriguez.

Edward I. Swichar, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for Blank, Rome, Comisky & McCauley.

### MEMORANDUM AND ORDER

VANARTSDALEN, Senior District Judge.

Defendants have moved to disqualify the law firm of Blank, Rome, Comisky and McCauley (Blank Rome) from representing the plaintiffs in the two above captioned consolidated civil actions pending in this court. An evidentiary hearing and oral argument was held on the motion on December 18, 1996. The parties filed extensive briefs both before and after the hearing. Upon consideration of all the submissions of record, the motion to disqualify Blank Rome will be denied.

Alexander B. Stein, Esq. a partner in the Blank Rome law firm has for many years represented the plaintiffs, Henry J. Guzewicz and Eleanore G. Guzewicz, his wife,[1] as well as other members of plaintiffs' family in both personal and business matters. Plaintiffs and other family members own approximately forty per cent of the corporate stock of the defendants, Stainless Enterprises of Pennsylvania, Inc. (SEPA) and a lesser but substantial percentage of the voting stock of Stainless Broadcasting Company (SBC), a Delaware corporation that is separate and independent of SEPA, but has many of the same shareholders as SEPA. SBC owns a television station in Binghampton, N.Y. (Station WICZ—a Fox network affiliate). SEPA is purely a holding company. SEPA is the sole shareholder of Stainless of Delaware (SED), a Delaware Corporation. SED has two wholly owned subsidiary corporations: (1) Stainless, Inc., a Pennsylvania Corporation that is engaged in the tower construction and fabrication business and (2) Resort Broadcasting, Inc., an Oregon corporation that owns a television station (KTVZ) in Oregon.

In addition to representing individual members of the Guzewicz family, Mr. Stein and Blank Rome have for many years prior to November 9, 1995 been corporate counsel for both SEPA and SBC.[2]

On July 3, 1996 plaintiffs filed Civil Action 96–4791 in this court. On the same day, plaintiffs filed in the District of Delaware, a civil action that, except for substituting SBC (a Delaware Corporation) for SEPA (a Pennsylvania Corporation) as a named defendant, contained essentially the same allegations and sought the same relief as the case filed in this district, Civil Action 96–4791. The

1. Henry J. Guzewicz died on or about October 19, 1996, after these lawsuits were filed. Substitution of plaintiff, Henry J. Guzewicz, by the personal representative of the Estate of Henry J. Guzewicz.will be required, but has not occurred to date. After the substitution is made, it is not certain that the personal representative will want to continue to retain Blank Rome as counsel for both plaintiffs, but for purposes of this motion it is assumed that the substitution of the Estate of Henry J. Guzewicz will not cause or necessitate a change of plaintiffs' counsel.

2. There may be some dispute as to whether Blank Rome was ever properly discharged as counsel. Blank Rome may have represented another affiliated corporation, not a party to this litigation, for some period of time after November 9, 1995. It is clear, however, that Blank Rome ceased representing SEPA and SBC on or shortly after November 9, 1995 in all matters and that Blank Rome was not representing either corporate defendant at the time of the filing of the present complaints or at any time thereafter.

action filed in the District of Delaware ·was later transferred by stipulation to this district where it was assigned as Civil Action 96–7740, and has been consolidated with Civil Action 96–4791.

Both actions allege violations of the Federal Security Laws by the defendants in issuing notices of the respective shareholders annual meetings and in the proxy solicitations contained therein, that allegedly sought approval of a proposed sale of stock and/or assets of SEPA and SBC to another corporation, Northwest Broadcasting, L.P. and/or Northwest Broadcasting, Inc. (Northwest Broadcasting). The complaints seek damages against the individually named defendants, all of whom are shareholders, officers and/or directors of either or both SEPA and SBC. In addition the complaints sought to enjoin the convening of the respective annual shareholders meetings, both scheduled to occur at the same place on July 10, 1996. The plaintiffs withdrew the claims for injunctive relief. Consequently, the injunction motions were denied as moot and the shareholders meetings were held as scheduled.

The complaints expressly identify the named corporate defendants SEBA and SBC as "nominal defendants". The amended complaint filed in Civil Action 96–4791 contains two counts that are derivative on behalf of SEPA against the individual defendants for alleged violations of Section 10b of the Securities Exchange Act of 1934 (15 U.S.C. § 78j and Rule 10b–5 promulgated thereunder) (Count II) and for breach of fiduciary duties (Count III). Count I is a claim against only the individual defendants for alleged Section 10b–5 violations. The remaining counts are against only the individual defendants for common-law state court claims; namely, negligent misrepresentation (Count IV), intentional misrepresentation (Count V) and negligence (Count VI). Civil Action 96–7740 contains the same counts, except that the corporate entity is therein at all times identified as SBC and, in addition contains a seventh count alleging violations of Delaware corporate statutory law (one

vote per share); against only the individual defendants. Except for possible declaratory relief as to the validity of the shareholders meetings held on July 10, 1996, the only relief that plaintiffs seek is money damages against the individual defendants and the usual request for "such other and further relief as the Court shall deem just and proper". In plaintiffs' brief in opposition to the motion to disqualify, Blank Rome states in part: "Plaintiffs do not claim any damages or seek any relief against SEPA or SBC, in any Count in either of the Amended Complaints." Plaintiffs have, through statements of counsel on the record, given up any attempt to set aside or invalidate any corporate action taken by either SEBA or SBC in regard to the sale or exchange of stock or assets to Northwest Broadcasting. (NT[3] 57 and 59).

■ Realistically, neither of these consolidated actions is against either of the named corporate defendants. Even though the evidence establishes that Blank Rome represented both SEPA and SBC for a long period of time prior to the commencement of these actions, the issue of when and whether an attorney may represent a party in litigation against a former client need not be decided because this litigation is not *against* or adverse to either corporate defendant. Neither action is against or adverse to a former client except as a nominally named defendant. Plaintiffs' counsel apparently thought it necessary to name the respective corporations as defendants because of the derivative shareholders claims contained in certain of the counts of the complaints. These derivative claims are brought, at least in theory, on behalf of, and not against, the respective corporations, named as nominal defendants. Any recovery in money damages on the derivative claims would ordinarily be recoverable by the corporations. Thus, these law suits are not being brought by Blank Rome, representing the plaintiffs, against or adverse to a former client, SEBA and/or SBC.

■ Defendants contend that representation by Blank Rome violates Rule 1.9 of the

---

**3.** NT hereafter refers to the notes of testimony of the hearing held on December 18, 1996—filed document # 11.

Pennsylvania Rules of Professional Conduct. That Rule provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation, or
>
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

Unless every derivative stockholder action is considered to be adverse to the corporation on whose behalf the action is taken, plaintiffs' complaints in these actions are not materially adverse to the interests of the respective nominally named defendant corporations.

In addition to being required to establish that the action is "materially adverse to the interests of the former client", the party seeking to disqualify an attorney on the basis of Rule 1.9(a) has the burden to establish that the matter is either the same or a substantially related matter to that which the attorney provided services to the former client.

All of the allegations of the complaints and the alleged causes of action arise out of the notices sent to stockholders on or about June 16, 1996. This was more than a half year after Blank Rome was discharged and ceased providing legal services as corporate counsel. The notices were of the calling of the annual shareholder meetings with accompanying proxy statements that apparently sought approval of a possible sale of stock and/or assets of SEBA and SBC to Northwest

Broadcasting. Defendants do not contend, and there is no evidence to suggest, that Blank Rome was counsel for or represented in any way SEBA or SBC or the board of directors or the officers of either corporation with respect to the negotiations with Northwest Broadcasting.[4] Consequently, disqualification on the basis of Rule 1.9(a) is not appropriate. Neither of these actions is materially adverse to the interests of Blank Rome's former clients SEPA and SBC and the causes of action are not substantially related to any matter about which Blank Rome provided services or advice as counsel to SEPA and/or SBC.

■ Defendants also argue that because of Blank Rome's long term representation of SEBA and SBC, they acquired confidential information concerning SEBA and SBC that either was or will be used to the disadvantage of SEBA and/or SBC. Again, defendants have wholly failed to show or even suggest any specific confidential information that Mr. Stein or any member of the Blank Rome firm ever received that would be of any use in the present lawsuits. The alleged Rule 10 b–5 violations are based on information that was contained in the notice of the shareholders meetings and the proxies contained therein, as to which Blank Rome had no information that was not provided and available to all shareholders and, in particular, to the plaintiffs and defendants.

From the various pleadings that have been filed in this case, it would appear that these lawsuits, as well as other litigation pending between and among the parties in other courts, arise out of a substantial disagreement among separate factions of shareholders. From the evidence and from Mr. Stein's testimony presented at the hearing on the motions to disqualify,[5] it is established

---

4. Blank Rome did attend, as private counsel for Mr. Guzewicz and the Guzewicz family shareholder interests, meetings with Mr. Guzewicz and other officers and directors of SEBA and SBC where the terms of proposed sales of stock and assets of the corporations to Northwest Broadcasting and others were discussed and possibly negotiated, but Blank Rome was not at that time representing any of the defendants, corporate or individual, and Blank Rome acquired no confidential or other information not fully known

and available to the plaintiffs as well as all of the defendants.

5. Mr. Stein was the only witness who testified at the hearing on the motion, and he was called as a hostile witness by defendants. His testimony on all material matters is not contradicted except possibly by inferences suggested by defense counsel.

that at one time there was a shareholders agreement containing buy/sell and death provisions funded by life insurance, among the plaintiff, Henry J. Guzewicz and the individual defendants, Richard J. Eberle and Robert A. Farrington. The agreement had been preliminarily drafted by Blank Rome and Mr. Stein had at various times advised all signatories concerning the agreement. However, the evidence does not suggest that Mr. Stein at anytime represented any of the individual defendants or provided them with any legal advice or confidential information that was not fully provided and shared with all parties to this litigation. The last time that Mr. Stein or anyone from Blank Rome had anything to do with drafting of the shareholders agreement was in 1989 or 1990 and it was thereafter revised by others without consultation with Blank Rome before it was signed (NT 24). Eventually, that agreement was terminated shortly before Mr. Guzewicz' death.[6] There are disputes and litigation pending over the validity and enforceability of the agreement and the disposition of the life insurance proceeds resulting from Mr. Guzewicz' death.

There is substantial additional litigation pending between and among the parties and other persons who hold interests in SEPA, SBC and other related corporations. Mr. Stein estimated that there were approximately ten law suits pending and that probably an equal number of those lawsuits had been commenced by plaintiffs or persons siding with them and an equal number commenced by defendants or their allies. Although not truly relevant to the present issues, it would appear that there are basic disagreements between the Guzewicz family shareholders on the one side, and the Ebberle–Farrington shareholders on the other side as to the operation of the corporations, and the sale or other disposition and/or termination of the businesses. The Guzewicz family members hold approximately forty percent of the voting stock of both SEPA and SBC; Ebberle and Farrington together control about fifty-

two to fifty-three percent of the stock in both companies. The remaining shareholder interests are scattered among persons such as donees of stock and former and retired employees. There are approximately fifty shareholders in each corporation.

According to the individual defendants, because of dissatisfaction as to the running of the corporations, it was decided to attempt to obtain bids for the purchase of the businesses. The board of directors of both corporations consisted of Mr. Guzewicz, Mr. Ebberle and Mr. Farrington. Disagreements arose as to the bidding process. Mr. Guzewicz made a bid, which he contended was a better bid than the bid of Northwest Broadcasting; Ebberle and Farrington contended that the Guzewicz bid was not bona fide and was entered simply to upset negotiations with Northwest Broadcasting. As a result, the Ebberle–Farrington faction, on or about November 9, 1995, in substance, took over complete control of the defendant corporations, discharged and replaced Blank Rome with James J. Heffernen as general counsel and proceeded to continue negotiations with Northwest Broadcasting without consulting with Mr. Guzewicz.

Upon Mr. Guzewicz' death, the remaining board members appointed a person friendly to the Ebberle–Farrington faction; refused to call a shareholders meeting, as demanded by the Guzewicz faction who contended that by owning more than one-fifth of the shares they had the right under the corporate by-laws to call a shareholders meeting and by cumulative voting insure at least one board member favorable to them. The dispute over who is the proper director replacement for Mr. Guzewicz is, or probably will be, the subject of another law suit.

It is clear that Blank Rome was for many years intimately involved as general counsel for SEPA and SBC, and undoubtedly obtained extensive knowledge about the defendant corporations[7]. The evidence presented

---

**6.** Mr. Stein performed some undefined "work" in connection with terminating the agreement, presumably on behalf of Mr. Guzewicz, because he was then no longer counsel for SEPA and/or SBC.

**7.** Mr. Stein's testimony tended to down-play any significant involvement in the internal workings of the corporations. According to his undisputed testimony, he was involved in reorganizing the corporate defendants and other related enterpris-

discloses that any and all information received by Blank Rome [8] and any and all advice provided to any of the defendants was fully known to and shared by all defendants. Mr. Guzewicz was, at all times while Blank Rome represented the defendant corporations, a member of the board of directors and as such was entitled to all of the information that came to the attention of the other members of the board of directors. Thus, even if Mr. Stein or Blank Rome did obtain what would otherwise be classified as confidential information by reason of representing the corporate defendants, it was information that was known and available to Mr. Guzewicz and all other parties to this litigation. The evidence tends to establish that as among all the shareholders there was no confidential or secret information. All of the negotiations for the sale to Northwest, and copies of the minutes of the boards of directors were apparently regularly sent to all shareholders. In view of this, it is difficult to foresee any scenario where, in this law suit, Blank Rome could take advantage of any information it might have acquired as counsel for SEPA and/or SBC to the disadvantage of any defendant. Defense counsel has suggested none, even though specifically requested to provide such evidence if any exists.

Defense counsel's position seems to be founded solely on *Maritrans v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 602 A.2d 1277 (1992).[9] Defense counsel's argument appears to be that *Maritrans* establishes a blanket rule of law that precludes an attorney who has been general corporate counsel for an extensive period of time, from ever thereafter representing an individual in an action against that corporation and that there need be no specific proof of probable use of confidential information.

Because of the claim for damages, both plaintiffs and defendants counsel agree that the value of the corporate stock will be an issue in this case. Mr. Brennan, defense counsel argues that: "it is plain that he [Mr. Stein] has come to have private, confidential, personal and intimate knowledge of the operation of the Stainless companies which he must per force be using in connection with his challenge to the valuation which has been placed on track with Northwest" (NT 101). Counsel fails·to be any more specific as to what such information may be, how it may be used against the former clients SEPA and SBC (against whom plaintiffs seek no damages or other relief), nor why Blank Rome and/or Mr. Stein "must per force be using" such information.

*Maritrans* involved issues as to when and under what circumstances an attorney may represent a direct competitor of a former corporate client in matters substantially related to matters about which advice and representation had been given to the former client (advice concerning labor union negotiations). The evidence in *Maritrans* established that the attorney had obtained substantial confidential information that would not have been available to the competitor and could be used by the competitor to Maritrans disadvantage. In this case, Blank Rome is representing the Guzewicz interests as minority stockholders against stockholders having a controlling interest. Although plaintiffs attorneys may have obtained certain information in representing SEPA and SBC

---

es "in the late 1980s"; handled litigation involving "tower collapses and things of that sort"; "on occasion", but not regularly, provided tax advice with respect to specific transactions; occasionally received financial reports; supervised pension plans and provided advice concerning the plans; provided employer/employee advice, but not in the last ten years. He did not provide advice concerning the financial affairs of the corporations. (NT 14).

8. The evidence does not establish that any member of the Blank Rome law firm other than Mr. Stein obtained any information or provided any legal service or advice to any defendant.

9. Mr. Brennan, counsel for defendants, stated in summation at the hearing: "this case begins and ends with *Maritrans*". Neither party has addressed the issue as to whether state law controls the issue of disqualification of counsel in this court where jurisdiction is founded only on federal securities laws. For purposes of this decision I will assume that Pennsylvania law is applicable. Certainly if continuing representation by counsel would violate the code of ethics for Pennsylvania practicing lawyers, disqualification should be ordered in this case. I have concluded that there is no ethical violation by Blank Rome continuing to represent the plaintiffs in this action on the basis of all evidence of record.

that was not available generally to the public, there is absolutely no evidence that the attorneys received any information (general or confidential) that was not fully known and available to all parties to this litigation. Therefore use or disclosure of confidential information to the disadvantage of any former client (nominal defendants SEPA and SBC) or any party to this litigation including the individual defendants is not only improbable, but I think impossible.

*Maritrans* made clear that it was not enunciating a blanket rule of the kind that defense counsel seeks. The Court in *Maritrans* said, inter alia:

> whether a law firm can later represent competitors of its former client is a matter that must be decided from case to case and depends on a number of factors. .... We do not wish to establish a blanket rule that a law firm may not later represent the economic competitor of a former client in matters in which the former client is not also a party to the lawsuit.

*Id.* 602 A.2d at 1286. The court also repeatedly made clear that the test is whether the interests of the former and present clients are "materially adverse" in a matter "substantially related to matters to matters in which he [the attorney] represented the former client". *Id.* at 1282. In this case, defendants have failed to establish that (1) the action and representation of the plaintiffs is materially adverse to the interests of the former clients SEPA and/or SBC or that (2) the action is a matter substantially related to matters in which plaintiffs' counsel formerly represented SEPA and/or SBC.

In light of the extensive litigation between the parties to these actions, it is understandable why defendants want to disqualify plaintiffs' counsel. Obviously, if new counsel had to be appointed it would cause a great deal of delay and expense to plaintiffs while other counsel was becoming acquainted with the various actions. Ordinarily, a party has the right to select counsel of the party's own choosing. Plaintiffs' counsel in this case was not selected in order to gain some tactical advantage over defendants because of some special and confidential information counsel had acquired over the years in representing

SEPA and SBC. Blank Rome had represented Mr. Guzewicz and his family for many years prior to being appointed general counsel for SEPA and SBC, and there is no valid reason to preclude counsel from continuing to so represent them in this action.

An appropriate order denying defendants motion to disqualify Blank Rome will be entered.

### ORDER

For the reasons set forth in the accompanying memorandum, it is ORDERED that the defendants' petition and motion to disqualify Blank, Rome, Comisky & McCauley as counsel for plaintiffs in the above entitled actions (filed document No. 8) is DENIED.