# Johnson v. Johnson

C.P. of Monroe County, nos. 404 DR 2005, 3095 Civil 2005.

*Marshall E. Anders,* for plaintiff.
*Kevin A. Hardy,* for defendant.

ZULICK, *J.,* December 5, 2005—Defendant Howard E. Johnson (Husband) has raised an allegation of conflict of interest in the representation of plaintiff Catherine M. Johnson (Wife) by Marshall E. Anders, Esquire and the firm of Anders and Masington LLC in this domestic relations case.

Wife filed a complaint in divorce on April 29, 2005. Her counsel at that time was Connie J. Merwine, Esquire. Husband filed an answer and counterclaim in divorce on May 26, 2005. Husband has at all times been represented by Kevin A. Hardy, Esquire and the firm of Wiesmeth and Hardy.

There has been a flurry of litigation between the parties since the divorce pleadings were closed. On July 18, 2005, Wife filed a petition to freeze marital assets, appoint a receiver and for exclusive possession of the marital residence. She also filed a petition on September 8, 2005, seeking money from Husband to pay her expert witness fees, alleging that the marital estate included Husband's business in residential construction and was worth more than $2.5 million. Husband filed an emergency petition for exclusive occupancy of the marital residence on September 14, 2005. Wife filed a motion to compel production of discovery material on October 7, 2005. Wife filed a petition for interim award of attorney's fees on the same day. Rules were issued on all of these petitions, and all were answered and contested.

Wife's first lawyer, Connie J. Merwine, Esquire filed a praecipe to withdraw her appearance on July 28, 2005. On the same document, below Attorney Merwine's signature, appeared the following:

"*Praecipe To Enter Appearance*

"Kindly enter my appearance pro se in this matter.

"Respectfully submitted,

"/s/Catherine M. Johnson"[1]

On July 29, 2005, Marshall E. Anders, Esquire of Anders and Masington LLC entered his appearance for Wife.

Husband filed another emergency petition on October 14, 2005, seeking to disqualify Wife's lawyer and his firm due to an alleged conflict of interest. Wife's counsel then filed a petition on October 18, 2005, requesting the court to hold a hearing and to determine whether a disqualifying conflict existed. A hearing was held on November 17, 2005 on the two petitions. Disposition of all other petitions and motions pending before the court was stayed pending a decision on the alleged conflict.

## FINDINGS OF FACT

(1) Husband and Wife were married on June 6, 1989.

(2) Husband was previously married. That marriage ended in divorce on September 23, 1987.

---

1. This attempt to withdraw an attorney's appearance was not effective because it was in violation of Pa.R.C.P 1012(b)(1) which requires leave of court unless another attorney enters his or her appearance simultaneously.

(3) Husband retained Randall Turano, Esquire, a lawyer and an associate in the firm of Rosenblum and Anders, to represent him in the divorce.

(4) After the divorce from his first wife, Husband testified that Attorney Turano prepared a prenuptial agreement for himself and Wife.

(5) Husband testified that he stored the prenuptial agreement in his safe, and that when he and Wife encountered marital difficulties, Wife removed the prenuptial agreement from the safe.

(6) Husband attempted to obtain a copy of the agreement in 2005 from Attorney Turano, who is now a sole practitioner. Attorney Turano advised him that he did not have a copy of the agreement, and that Husband should contact the executor of the estate of Robert Rosenblum, Esquire (as Mr. Rosenblum was then deceased).

(7) Husband's attempts to obtain a copy of the prenuptial agreement from the estate of Rosenblum were unsuccessful, and on April 19, 2005, his attorney wrote to Attorney Anders to learn if he had Husband's prenuptial agreement file.

(8) Attorney Anders wrote back to him on April 27, 2005, stating that he did not have Husband's file.

(9) Attorney Turano testified that he recalled preparing a prenuptial agreement for Husband and Wife, but did not remember the terms or provisions of the agreement.

(10) Wife testified that she did not sign a prenuptial agreement and further that Attorney Turano did not prepare one for her.

(11) Husband testified that he had no contact with Attorney Anders during the time that Attorney Turano and the firm of Rosenblum and Anders were representing him.

(12) Attorney Anders testified that he had no contact with Husband during the time that Husband was represented by Attorney Turano and the firm of Rosenblum and Anders.

(13) Attorney Anders also testified that he had no recollection of hearing or seeing Husband's case while he was a member of the firm of Rosenblum and Anders.

(14) Attorney Turano testified that Robert Rosenblum, Esquire was the partner he discussed Husband's case with, not Attorney Anders. He also testified that the firm did not have gatherings where Husband's case was reviewed by other attorneys in the firm.

## DISCUSSION

The question now before the court is whether Attorney Anders and his firm have a conflict of interest that precludes them from further representation of Wife in the domestic relations matters now pending before us. I am guided in the resolution of this dispute by Rule 1.9 of the Rules of Professional Responsibility, which provides as follows:

"Rule 1.9. Duties to former clients

"(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent."

Rule 1.9(a) prohibits a representation of a client if the lawyer previously represented a party on the opposite side of the same dispute:

"This rule seeks to protect a client from the future prospect of her attorney marching off to represent her adversaries, using the former client's secrets to more effectively represent the new clients. Protecting clients from this scenario promotes fairness in litigation and encourages clients to freely communicate with their attorneys." *Focht v. Bryn Mawr Hospital,* 16 D.&C.4th 150, 153 (1992).

This is a time-honored rule in this country. As the United States Supreme Court said in 1850:

"There are few of the business relations of life involving a higher trust and confidence than those of attorney and client or, generally speaking, one more honorably and faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is the duty of the court to administer them in a corresponding spirit, and to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it. *Stockton v. Ford,* 52 U.S. (11 How.) at 247." *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 253-54, 602 A.2d 1277, 1283 (1992)

Thus, if Attorney Anders previously represented Mr. Johnson in the preparation of a prenuptial agreement with Mrs. Johnson, he would have a conflict of interest and would be disqualified. The determination as to whether to disqualify counsel because of a conflict of interest is within the discretion of the court. *Akerly v. Red Barn System Inc.,* 551 F.2d 539 (3d Cir. 1977).

No witness in the hearing held on the disqualification motion, including Husband, testified that Mr. Anders had any contact whatsoever with Husband or Wife during the time Husband used the services of Rosenblum and Anders, approximately 17 years ago. Rule 1.9(a) therefore does not require disqualification.

This does not end our inquiry because a lawyer may still have a conflict of interest under Rule 1.9(b) if the lawyer obtained information about the case from the representation by another lawyer in the same firm. Rule 1.9 (b) provides as follows:

"(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

"(1) whose interests are materially adverse to that person; and

"(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent."

The testimony in this case revealed no privileged information flowing to Attorney Anders while Attorney Turano represented Husband and prepared a prenuptial agreement. Mssrs. Anders, Turano and Husband all testified that Anders did not have any contact with Husband or his case while Husband was a client of the firm.

The comment to Rule 1.9(b) confirms that in this situation, there is no disqualifying conflict:

"Paragraph (b) operates to disqualify the lawyer only when the lawyer involved has actual knowledge infor-

mation protected by Rules 1.6 and 1.9(c). Thus, if a lawyer while with one firm acquired no knowledge of information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict." Rules of Professional Conduct, Rule 1.9, 42 Pa.C.S. adopted October 16, 1987; amended August 23, 2005, effective January 1, 2005.

Husband also argues that Anders "acquired information relative to the prenuptial agreement that was sought in confidentiality due to the prior representation of Howard Johnson by Rosenblum and Anders P.C." Husband's brief, p. 9. Husband's counsel wrote to Attorney Anders on April 19, 2005, stating that he was looking for a copy of the prenuptial agreement because "the copy of the prenuptial agreement that you had given to him through Attorney Randy Turano was taken by Catherine Johnson prior to the parties' separation and she is indicating she has no knowledge of the same." Defendant's exhibit 1.

Husband stated in his brief that his strategy to recover a copy of the agreement from Wife was to try and trick her into surrendering a copy:

"Howard Johnson was trying to trick Catherine Johnson into believing that he had a copy so that she would supply the original to her attorney and her attorney would supply a copy through discovery in the divorce proceedings. Catherine Johnson, at that time, admitted to Howard Johnson that she had taken the prenuptial agreement." Husband's brief, p. 4.

This strategy apparently did not work, because no copy was forthcoming from the parties before our hearing. However, the communication to Attorney Anders by Husband on April 19, 2005 while Husband was searching for a copy of the document would not have had an effect on Wife's strategy by the time Attorney Anders got into the case on August 15, 2005. The parties had already attended a support conference before the Monroe County Domestic Relations Office, on Wife's claim for spousal support. As Husband states in his brief:

"Subsequent to the conversation relative to the prenuptial agreement, Catherine Johnson filed a petition for child support and spousal support in the Monroe County Court of Common Pleas. Howard Johnson filed a counterpetition for child support since each party had physical custody of one of the parties' children. The petitions were heard by Monroe County Domestic Relations and the issue of spousal support claimed by Catherine Johnson was contested due to the prenuptial agreement. The spousal support was denied by Domestic Relations." Husband's brief, p. 4.

This hearing was held before Domestic Relations on June 30, 2005 and an interim child support order was entered by the court on July 8, 2005. The parties had already faced-off at a contested hearing at which the prenuptial agreement was an issue, so at a minimum, Wife knew that Husband was unable to produce a copy of it when it was needed, before Attorney Anders entered his appearance in the case. Husband therefore would not have been able to "trick" Wife into producing a copy of the agreement by the time Anders became her lawyer and

we will not rely on such a strategy to deny a litigant of her choice of an attorney.

## CONCLUSIONS OF LAW

(1) Marshall E. Anders, Esquire and his firm of Anders and Masington LLC do not have a conflict of interest precluding them from representing the plaintiff in this matter.

(2) The court makes no determination at this juncture as to whether a prenuptial agreement exists between the parties or what its terms may be.

## ORDER

And now, December 5, 2005, following a hearing and consideration of the respective petitions by Husband and Wife for special relief, it is ordered as follows:

(1) Marshall E. Anders, Esquire and the firm of Anders and Masington P.C. do not have a conflict of interest that would disqualify them from representation of plaintiff Catherine M. Johnson;

(2) Defendant Howard E. Johnson's petition seeking to disqualify Anders and his firm from representation of plaintiff Catherine M. Johnson is denied;

(3) The order staying all proceedings entered on October 20, 2005 is vacated.