J-A23009-21

2021 PA Super 245

MATTHEW DARROW : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
PPL ELECTRIC UTILITIES :
CORPORATION :
: No. 236 MDA 2021
Appellant :

Appeal from the Order Entered January 26, 2021
In the Court of Common Pleas of Lackawanna County
Civil Division at No:  17 CV 3312

BEFORE:  PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY MURRAY, J.:              **FILED:  DECEMBER 14, 2021**

PPL Electric Utilities Corporation (Appellant) appeals from the order

denying its motion to disqualify the law firm of Munley Law, P.C. and its

attorneys (Munley or Munley firm) from representing Matthew Darrow

(Darrow), the plaintiff in the underlying personal injury, negligence/premises

liability action against Appellant.  After careful review, we reverse and remand

for the entry of an order precluding the Munley firm and its attorneys from

representing Darrow.

On April 17, 2015, Darrow suffered serious injuries when the vehicle he

was driving collided with a utility pole and came into contact with a downed

power line.  Darrow subsequently retained Munley attorney John M. Mulcahey,

Esquire (Mulcahey or Attorney Mulcahey).  On June 6, 2017, Mulcahey

_____

[*] Former Justice specially assigned to the Superior Court.

initiated suit by filing a writ of summons against Appellant on Darrow's behalf. The same day, Mulcahey also filed a request for pre-complaint discovery.

Mulcahey, since February 2014, has practiced law with Munley, a Scranton-based firm specializing in personal injury, and employing approximately 10 attorneys. Prior to joining Munley, Mulcahey worked for 18 years for the law firm of Lenahan & Dempsey, P.C. (Lenahan). During that time, Mulcahey represented Appellant in defending numerous personal injury lawsuits.

On July 26, 2017, Appellant filed a motion to disqualify Mulcahey and the entire Munley firm from representing Darrow. Appellant based its request on Mulcahey's: (a) extensive past representation of Appellant; and (b) "intimate knowledge of the inner workings of [Appellant's] operations" and litigation strategy. Motion to Disqualify, 7/26/17, at 7. Appellant asserted that an impermissible conflict of interest existed under the Pennsylvania Rules of Professional Conduct, and the conflict implicated all of Munley's attorneys.

Appellant attached to the motion to disqualify an affidavit executed by Andrea Martino (Martino). For 15 years, Martino worked in Appellant's Office of General Counsel as a legal claims specialist and later, legal operations manager. Affidavit, 7/24/17, at 1. Martino stated:

> During [Mulcahey's] representation of [Appellant] . . . Attorney Mulcahey had direct involvement in the handling [of] no less than thirty-five (35) active litigation files. . . .
>
> Some of these matters involved facts similar to the instant suit, wherein person(s) were allegedly injured, or property was

- 2 -

allegedly damaged as a result of a [utility] pole hit or [electric] line contact.

\* \* \*

The underlying facts of [the instant] personal injury lawsuit will be substantially similar to Attorney Mulcahey's prior representations of [Appellant], and will involve information of a similar character and degree as Attorney Mulcahey was privy to in accordance with his attorney-client relationship with [Appellant].

\* \* \*

During his representation of [Appellant], Attorney Mulcahey received, handled, or utilized confidential and proprietary information regarding [Appellant's] operations and other privileged and confidential business matters.

As a result of his representation of [Appellant], Attorney Mulcahey and by imputation [Munley,] possess intimate knowledge and familiarity with [Appellant's] business and privileged and confidential information as to [Appellant's] practices and litigation strategy and handling …

*Id.* at 2-4 (paragraph numbering omitted). Further, Martino stated that Mulcahey never notified Appellant about Mulcahey's representation of Darrow, nor did Appellant waive the conflict of interest created by Mulcahey's representation of Darrow. *Id.* at 2.

On August 14, 2017, Darrow, through Mulcahey, filed a response in opposition to Appellant's motion to disqualify, arguing no conflict of interest existed and Mulcahey's representation of Darrow was not improper. Darrow asserted, *inter alia*:

Attorney Mulcahey has not represented [Appellant] in any action involving the subject [utility] pole or electrical wires. As such, Attorney Mulcahey did not obtain any confidential and/or proprietary records that would be beneficial, relevant, or related

- 3 -

to the subject matter of this litigation. Attorney Mulcahey's representation of [Appellant] ended almost four years ago. Thus, any alleged confidential or proprietary information that he may have obtained would be obsolete.

Response to Motion to Disqualify, 8/14/17, at ¶ 10.

The trial court heard oral argument on the motion, and on August 9, 2019, granted the motion in part and disqualified Mulcahey from representing Darrow. The court reasoned:

> Mulcahey does not deny his prior representation [of Appellant], nor does he dispute that some of the matters involved downed wires from damaged utility poles. Mulcahey does argue, however, that the current case in which he represented [] Darrow is not the "same or a substantially related matter" as envisioned in the Rules of Professional Conduct. [**See** Pa.R.P.C. 1.9.[1]] Mulcahey explains his rationale by pointing out that the pole at issue in the instant matter in which he represents Darrow is a separate and distinct pole from any of the other [prior] matters in which he represented [Appellant]. Mulcahey's argument here is at best unpersuasive. Nothing is presented by either side here to support even an inkling that this case would not be substantially related to other cases involving downed utility wires.

* * *

_____

[1] Under Rule 1.9, attorneys owe duties to former clients. "A lawyer who has formerly represented a client in a matter shall not thereafter . . . represent another person in the **same or a substantially related matter** in which that person's interests are materially adverse to the interests of the former client . . . ." Pa.R.P.C. 1.9(a) (emphasis added); **see also** Pa.R.P.C. 1.9(c) (stating an attorney with a conflict of interest under this Rule is prohibited from disclosing or using information related to a prior representation). Rule 1.9 explains that matters "are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Pa.R.P.C. 1.9, cmt. 3.

The fact that the utility pole in this case was not involved in any of the cases in which Mulcahey previously represented [Appellant] is, quite simply, immaterial. We do not believe that the phrase "substantially related" means that Mulcahey can only be excluded from cases against [Appellant] involving poles which happened also to be the subject of matters defended previously by Mulcahey. That is, quite simply, too narrow.

Opinion and Order, 8/9/19, at 3, 4 (footnote added). However, the trial court found the record was not sufficiently developed to determine whether disqualification of the Munley firm was appropriate under Pennsylvania Rule of Professional Conduct 1.10 (imputed disqualification of a law firm). **See id.** at 4-5 (finding record insufficient "to conclude one way or the other regarding the sufficiency or propriety of any type of screening process employed by the Munley firm"). Thus, the trial court indicated it would schedule an evidentiary hearing on the matter.

Pertinently, Rule 1.10(b) provides:

(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter **unless**:

(1) **the disqualified lawyer is screened** from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) **written notice is promptly given** to the appropriate client to enable it to ascertain compliance with the provisions of this rule.

Pa.R.P.C. 1.10(b) (emphasis added); *see also* Pa.R.P.C. 1.0(k) (defining "screened" as "the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law."). "**Confidential information gained by one member of a law firm is imputable to other members of the same law firm**." *Estate of Pew*, 655 A.2d 521, 545 (Pa. Super. 1994) (emphasis added); *see also* Pa.R.P.C. 1.10, cmt. 2 ("The rule of imputed disqualification . . . gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client").

Notably, in August 2019, two other attorneys from the Munley firm filed an unrelated wrongful death/survival action against Appellant in the Lackawanna County Court of Common Pleas on behalf of Mary Ann Rudalavage (Rudalavage), individually and as administrator of the estate of John Rudalavage.[2] On October 21, 2019, Appellant filed a separate motion to disqualify Munley in the Rudalavage case, arguing Munley failed to establish

---

[2] Mulcahey did not represent Rudalavage, whose husband was driving on a road owned by Appellant when he was involved in a collision and died as a result.

- 6 -

an adequate and timely screening protocol pursuant to Rule 1.10(b), and Mulcahey's conflict of interest was imputed to all Munley attorneys.

On January 24, 2020, the trial court held a joint hearing in the Darrow and Rudalavage cases to address Appellant's respective motions to disqualify the Munley firm. Appellant presented the testimony of Martino and Joel Compton (Compton); Compton previously worked in Appellant's Office of General Counsel as a Legal Claims Coordinator. Munley, on behalf of Darrow and Rudalavage, presented the testimony of Mulcahey and Maria Elkins (Elkins), Munley's Chief Operations Officer.

Mulcahey testified that during the 18 years he worked for Lenahan, he served as outside counsel for Appellant. N.T., 1/24/20, at 85. Mulcahey acknowledged handling "as many as 40 or 50 cases" for Appellant while working at Lenahan. *Id.* at 97. On some occasions, Mulcahey collaborated with Martino and Compton in defending Appellant against personal injury lawsuits. *Id.* at 97-98. Mulcahey stated he did not discuss with any of the attorneys at Munley, "proprietary knowledge," "trial strategies" or "settlement strategies" that Mulcahey may have learned while representing Appellant. *Id.* at 92-93. Mulcahey testified that since his disqualification on August 9, 2019, he had no involvement in the Darrow litigation. *Id.* at 93. On cross-examination, Mulcahey acknowledged he had "gathered a lot of information relevant to the defense of [Appellant's] casualty cases while [he was] with Lenahan[.]" *Id.* at 97-98. Mulcahey confirmed that prior to his

disqualification, he visited the scene of Darrow's accident with an engineering expert. *Id.* at 113-15; *see also id.* at 116 (Mulcahey testifying he reviewed the police report with the expert). In addition, Mulcahey conceded he never saw a written protocol from Munley concerning a conflict screen, *id.* at 108, 117, nor was any screening protocol in place when Mulcahey filed the action on Darrow's behalf in June 2017. *Id.* at 113; *see also id.* at 117 (Mulcahey stating he never signed a written screening protocol). Mulcahey testified that Munley created the screen **after** the trial court's August 9, 2019 order disqualifying him. *Id.* at 116.

Elkins testified that she had worked for Munley since 2016. *Id.* at 69. Although not a lawyer, she is responsible for the creation, implementation and adherence to firm policies and procedures. *Id.* at 70. Elkins stated she created the screening protocol to preclude Mulcahey's access to office case files in the Darrow and Rudalavage cases. *Id.* at 71. Elkins elaborated, "**Following the** [] **August 9, 2019 order** [disqualifying Mulcahey] . . ., I developed a screening protocol specifically to preclude . . . Mulcahey from accessing any files, information or data in the possession of Munley[.]" Affidavit, 1/24/20, at ¶ 6 (emphasis added). She testified that the physical case files for both Darrow and Rudalavage are locked in her office. N.T., 1/24/20, at 72. Elkins stated that all staff at Munley have been instructed not to discuss the two cases with Mulcahey, and were advised that doing so could result in disciplinary action, up to and including termination. *Id.* at 73.

Further, Elkins explained Mulcahey would not receive any fees in either the Darrow or Rudalavage case. Affidavit, 1/24/20, at ¶ 15. On cross-examination, Elkins acknowledged she is not a lawyer and had never created a screening protocol prior to September 2019, after Mulcahey was disqualified and the screen was implemented. *See* N.T., 1/24/20, at 79-80, 83. Elkins also stated the screening protocol was put in writing; however, she did not produce written evidence of any writing, and there is no written documentation of the screen in the certified record. *Id.* at 81. Elkins testified that none of the attorneys in the Munley firm signed any screening protocol. *Id.*

Next, Appellant presented testimony from Martino, Appellant's legal operations manager. *Id.* at 21. During Martino's nearly 18 years of employment with Appellant, she coordinated with outside legal counsel, including Mulcahey, to formulate litigation defense strategy. *Id.* at 22. Martino described the various duties Mulcahey performed when he represented Appellant, which involved analyzing legal claims in personal injury/wrongful death actions, giving recommendations as to liability, propounding discovery, witness preparation, accident site evaluation, and developing settlement strategy. *Id.* at 25-34. Martino testified that Mulcahey had access to Appellant's proprietary records, internal policies, and other confidential information. *Id.* at 31, 35.

Finally, Compton testified that he had worked for Appellant in its Office of General Counsel. *Id.* at 48; *see also id.* at 49-50 (Compton stating his job responsibilities were similar to those of Martino). Compton also worked with Mulcahey in defending numerous casualty cases. *Id.* at 48, 50.

By memorandum and order entered January 26, 2021, the trial court denied Appellant's request for disqualification of Munley as to both Darrow and Rudalavage, concluding Munley's "screening process is adequate." Memorandum and Order, 1/26/21, at 9. Appellant timely appealed.[3] Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellant presents a single issue for our consideration:

DID THE TRIAL COURT ERR IN DENYING THE MOTION TO DISQUALIFY MUNLEY [] BECAUSE THE FIRM FAILED TO COMPLY WITH PENNSYLVANIA RULE OF PROFESSIONAL CONDUCT 1.10(B), SINCE IT DID NOT IMPLEMENT A TIMELY OR ADEQUATE ETHICAL SCREEN WITH REGARD TO THE DISQUALIFIED ATTORNEY AND IT DID NOT PROVIDE WRITTEN NOTICE TO THE FORMER CLIENT TO ENABLE IT TO ASCERTAIN COMPLIANCE WITH THE PROVISIONS OF THE RULE?

Appellant's Brief at 3.

Preliminarily, we observe that an order denying a motion to disqualify a law firm based on conflict of interest is immediately appealable as a collateral

_____

[3] Appellant also appealed the disqualification ruling in Rudalavage's case; the appeal is before this panel, docketed at No. 237 MDA 2021, and addressed in a separate decision.

order. ***Dougherty v. Phila. Newspapers, LLC***, 85 A.3d 1082, 1086 (Pa.

Super. 2014); ***see also*** Pa.R.A.P. 313 (governing collateral orders).

> Furthermore:
>
> When reviewing a trial court's order on disqualification of counsel, we employ a plenary standard of review.  Courts may disqualify attorneys for violating ethical rules.  On the other hand, courts should not lightly interfere with the right to counsel of one's choice.  Thus, disqualification is appropriate only when both another remedy for the violation is not available and it is essential to ensure that the party seeking disqualification receives the fair trial that due process requires.

***E.R. v. J.N.B.***, 129 A.3d 521, 526 (Pa. Super. 2015) (citation omitted).[4]

Appellant argues the trial court erred in not disqualifying Munley, as the

conflict of interest created by Mulcahey's extensive prior representation of

Appellant was imputable to the other Munley attorneys, where:

> (a) Munley did not establish a screening protocol until the trial court disqualified Mulcahey in August 2019, **well after** Mulcahey entered his appearance on behalf of Darrow, initiated this action, requested discovery, and viewed the accident scene with an expert;

---

[4] Darrow/Munley incorrectly states the applicable standard of review is abuse of discretion.  ***See*** Darrow Brief at 4-6.  Darrow relies on ***Commonwealth v. Boring***, 684 A.2d 561, 565 (Pa. Super. 1996) ( "As the **federal court** pointed out, the determination as to whether to disqualify counsel because of a conflict of interest is within the discretion of the trial court." (emphasis added; citation and quotations omitted)).  No Pennsylvania case has applied the abuse of discretion standard announced in ***Boring***.  To the contrary, numerous decisions apply the plenary standard of review.  ***See***, ***e.g.***, ***Weber v. Lancaster Newspapers, Inc.***, 878 A.2d 63, 80 (Pa. Super. 2005) ("When reviewing a trial court's order on disqualification of counsel, we employ a plenary standard of review." (citing ***Vertical Res., Inc. v. Bramlett***, 837 A.2d 1193, 1201-02 (Pa. Super. 2003)).

(b) Munley has never produced a written copy of the purported screening protocol; and

(c) Mulcahey has never seen a writing setting forth a screening protocol, nor have any of the attorneys at Munley signed such a protocol.

**See** Appellant's Brief at 17-19. Appellant further argues Darrow/Munley failed to comply with the provisions of Pa.R.P.C. 1.10(b)(2) (requiring "written notice [to be] promptly given to the appropriate client to enable it to ascertain compliance with the provisions of this rule."). **Id.** at 29-30.

Our review reveals no precedential Pennsylvania authority with a controlling analysis for the adequacy of a law firm's conflict protocol under Rule 1.10(b). However, numerous non-precedential Pennsylvania decisions have employed the factors identified in **Dworkin v. General Motors Corp.**, 906 F. Supp. 273 (E.D. Pa. 1995)[5] ("**Dworkin** factors"). **Id.** at 279-80 (adopting the non-exhaustive list of factors enumerated in **Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz**, 602 A.2d 1277, 1289 (Pa. 1992) (Nix, C.J., dissenting)); **see also Rippon v. Rippon**, 2014 Pa. Dist. & Cnty. Dec. LEXIS 1, at *19 (C.C.P. Dauphin 2014) (applying **Dworkin** factors);[6] **Royal**

_____

[5] Where we are unable to find Pennsylvania precedent, "we may look to federal case law for its persuasive value." **Beemac Trucking, LLC v. CNG Concepts, LLC**, 134 A.3d 1055, 1061, n.4 (Pa. Super. 2016).

[6] While "decisions of the Court[s] of Common Pleas are not binding precedent[], they may be considered for their persuasive authority." **Wilson v. Parker**, 227 A.3d 343, 356 (Pa. Super. 2020) (citation omitted).

- 12 -

***Bank of Pa. v. Walnut Square Partners***, 2006 WL 771457, at *3; 2006

Phila. Ct. Com. Pl. LEXIS 147, at *8 (C.C.P. Phila. 2006) (same).

Instantly, we, like the trial court, find the ***Dworkin*** factors valuable and

appropriate in examining whether Munley should be disqualified. ***See***

Memorandum and Order, 1/26/21, at 3.

The ***Dworkin*** factors include:

1. the substantiality of the relationship between the attorney and
the former client

2. the time lapse between the matters in dispute

3. the size of the firm and the number of disqualified attorneys

4. the nature of the disqualified attorney's involvement

5. the timing of the wall.

***Dworkin***, 906 F. Supp. at 279-80 (quoting ***Maritrans***, 602 A.2d at 1289).

The features of the wall itself should also be considered, including:

a. the prohibition of discussion of sensitive matters

b. restricted circulation of sensitive documents

c. restricted access to files

d. strong firm policy against breach, including sanctions, physical
and/or geographical separation[.]

***Id.*** at 280 (quoting ***Maritrans***, 602 A.2d at 1289).

Finally, the burden of proving compliance with the screening exception

of Rule 1.10(b) is on the law firm whose disqualification is sought. ***See***

*Dworkin*, 906 F. Supp. at 279; *Rippon*, 2014 Pa. Dist. & Cnty. Dec. LEXIS

1, at *14-15 (collecting federal cases).

Before analyzing the *Dworkin* factors, we recite below the trial court's

verbatim reasoning for declining to disqualify the Munley firm:

> In looking at the substantiality of the relationship between the attorney (Mulcahey) and the former client ([Appellant]), while it certainly appears that Mulcahey represented [Appellant] during his time at Lenahan [] on numerous matters, upon closer inspection, a significant number of those matters did not involve the "same or substantially similar" types of cases as are presented in *Darrow*. . . .  Additionally, Mulcahey was one of several attorneys in the Lenahan [] firm servicing [Appellant]. . . . Considering the time lapse between the matters in dispute, although the record does not disclose the last [Appellant] case Mulcahey worked on while at Lenahan [], we do know that he joined the Munley firm in February 2014.  It also appears that the Munley firm's involvement in the *Darrow* case commenced shortly before the filing of the writ of summons in 2017. Considering the size of the [Munley] firm and the number of disqualified attorneys, the record suggests the Munley firm consists of ten attorneys, several of whom ha[ve] prosecuted cases against [Appellant] both before and after Mulcahey's association with the Munley firm.  In considering the nature of the disqualified attorney's (Mulcahey) involvement, the record reflects that he prepared a request for production of documents in pre-complaint discovery and may have attended discovery court to argue against [Appellant's] objections to his discovery requests prior to the time of his disqualification.  . . . **The timing of the wall is troublesome** … in the *Darrow* matter.  The record reflects that the wall was established **subsequent to** our Opinion and Order in August 2019.  The testimony of *Andrea Martino*[7] reflects that it was put in place in September 2019.  This is more than **two years after** the commencement of the *Darrow* matter.

---

[7] This is the first of the trial court's three incorrect identifications of the witness as Andrea Martino (Appellant's legal operations manager), when the court presumably meant Maria Elkins (Munley's chief operations officer).  We italicize the error, which was likely an oversight, although the error could be viewed as a factual finding not supported by the record.

With respect to the features of the wall itself, while they could benefit from some improvements, we find that they pass muster. *Andrea Martino* testified regarding the prohibition of discussion of sensitive matters, the restriction placed on the circulation of sensitive documents and access to files, and the strong firm policy against breach, including sanctions. In addition, Mulcahey's testimony reflects that he had no discussion with any other members of the Munley firm regarding [the Darrow case], and there is nothing in the record to contradict that. …

[] Conclusion.

We find Attorney Mulcahey's testimony credible. Additionally, *Andrea Martino*'s skepticism as to whether Mulcahey communicated any inside information from [Appellant] to the Munley firm buttresses Mulcahey's testimony that he has not. Considering all the factors we must, and in light of the testimony of the Munley firm's representative with respect to its screening process, we will not disqualify the Munley firm from pursuing [the Darrow case]. We cannot ignore the choice made by [Darrow] … to choose [his] counsel. ***See*** Comment 4 to Pa.R.P.C. 1.9 [(stating, *inter alia*, "the Rule should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel.")]. We find that Munley [] has met its burden  . . .  in demonstrating that its screening process is adequate.

Memorandum and Order, 1/26/21, at 7-9 (footnote, italics and emphasis added; citation modified; some capitalization omitted).

Upon review, we disagree with the trial court's weighing of the ***Dworkin*** factors and address each in turn.

*Factor 1 - Substantiality of the relationship between Mulcahey and Appellant*

There is no question Mulcahey had a substantial relationship with Appellant; he represented, *i.e.*, defended Appellant, in numerous lawsuits over a period spanning nearly two decades. During that time, Mulcahey was privy to proprietary information, including information pertaining to

- 15 -

Appellant's internal operations and litigation strategy. Concerning this factor, Appellant argues:

> The trial court's determination, that "while it appears that Attorney Mulcahey represented [Appellant] during his time at Lenahan [] on numerous matters, upon closer inspection, a significant number of those matters did not involve the 'same or substantially similar' types of case as are presented in *Darrow*" [Opinion and Order, 8/9/19, at 7], is both unsupported by the record and conflicts with the trial court's own prior decision to disqualify Attorney Mulcahey from representing [Appellant] in the underlying action.

Appellant's Brief at 23. We agree. As discussed above, in disqualifying Mulcahey, the trial court found "[n]othing is presented by either side here to support even an inkling that this case would not be substantially related to other cases involving downed utility wires." Opinion and Order, 8/9/19, at 3. The record supports this conclusion. **See id.**; **see also** N.T. (motion to disqualify hearing), 1/4/19, at 35 (counsel for Darrow conceding that during Mulcahey's prior representation of Appellant, Mulcahey "worked on other [electrical utility] pole cases"). This factor weighs in favor of disqualification.

*Factor 2 - The time lapse between the instant case and Mulcahey's prior representation of Appellant*

The record indicates a time lapse of approximately 3-4 years between representations. This factor does not weigh in favor of disqualification.

*Factor 3 - Size of Munley and number of disqualified attorneys*

The Munley firm is relatively small, consisting of approximately 10 attorneys. A law firm's small size is "a detriment rather than an asset in implementing an effective screen" because there is more contact between the

attorneys. **_Dworkin_**, 906 F. Supp. at 280 (citation omitted); **_see also Royal Bank of Pa._**, 2006 Phila. Ct. Com. Pl. LEXIS 147, at *9; 2006 WL 771457, at *3 (relatively small size of 14-attorney firm was a factor in finding screening protocol ineffective). This factor weighs in favor of disqualification.

_Factor 4 – The nature of Mulcahey's involvement_

Mulcahey was counsel of record for Darrow and had significant involvement in the case for more than two years prior to his disqualification in August 2019. Mulcahey filed the action, propounded discovery, communicated with opposing counsel, consulted with an expert, and visited the accident scene with an expert. **_See, e.g._**, N.T., 1/24/20, at 113-15; 116. This factor also weighs in favor of disqualification.

_Factor 5 – The timing of the wall_

This factor **heavily** weighs in favor of disqualification. The trial court correctly described the timing of the wall as "troublesome." The record reveals Munley had **no** screening protocol in place between the time Mulcahey filed the action in June of 2017 until September 2019. **_See id._** at 71-72, 79-80, 116. During that time, Mulcahey performed multiple functions as Darrow's attorney. **_Cf. Dworkin_**, 906 F. Supp. at 280 (noting importance of screening protocol "at the time when the potentially disqualifying event occurred, either when the attorney first joined the firm or **when the firm accepted a case presenting an ethical problem**." (emphasis added; citation and quotation marks omitted); **_Rippon_**, 2014 Pa. Dist. & Cnty. Dec. LEXIS 1, at *14 (stating

disqualification of law firm employing an attorney with conflict of interest under Rule 1.9 "can be avoided," pursuant to Rule 1.10(b), "when a proper screen . . . is established **prior to** the arrival of the new attorney at the firm and when it is a formal, **written**, screening procedure." (emphasis added)).

*Final factor – The features of the wall*

This factor also favors disqualification. The record establishes that (a) none of the attorneys at Munley, including Mulcahey, signed a written screening protocol (nor has Munley produced a writing); (b) Mulcahey has not seen any writing detailing the screening protocol; and (c) Mulcahey testified, "I don't know what it [the screening protocol] states[.]" N.T., 1/24/20, at 81, 117; **see also** Pa.R.P.C. 1.0, cmt. 9 ("To implement, reinforce and remind all affected lawyers of the presence of the screening, it may be appropriate for the firm to undertake such procedures as a written undertaking by the screened lawyer to avoid any communication with other firm personnel and any contact with any firm files or other information[.]"). Further, Elkins testified she never created a screening protocol prior to this case. N.T., 1/24/20, at 79-80; **see also id.** at 81-82 (Elkins stating she did not review screening requirements prior to establishing the screen).

Considering the above factors, we conclude that Munley has not met its burden of establishing compliance with Rule 1.10(b). Additionally, Munley failed to provide Appellant with prompt written notice that Mulcahey was

representing Darrow, in violation of Rule 1.10(b)(2). We find the following rationale persuasive:

> A client should not discover from his or her now attorney that his then attorney, with whom he closely worked, is working for the opposition and has not disclosed it. **The lack of disclosure raises a specter of impropriety that no *ex post facto* Chinese Wall can contain**. Put another way, the doubt created by infidelity can never be cured and the court will not instruct a party to overlook it so that a one client may have counsel of his choice, especially when the firm was in a position to avoid the harm complained of.

*Royal Bank of Pa.*, 2006 Phila. Ct. Com. Pl. LEXIS 147, at *7; 2006 WL 771457, at *2 (emphasis added); *see also* Pa.R.P.C., Preamble 6 (under the Rules of Professional Conduct, lawyers and judges "should further the public's . . . confidence in the justice system[.]").

Accordingly, and for the above reasons, we reverse the denial of Appellant's motion to disqualify,[8] and remand for the entry of an order precluding Munley and its attorneys from representing Darrow in the underlying litigation.

Order reversed. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

P.J. Panella joins the opinion.

---

[8] Darrow repeatedly emphasizes that the protracted dispute regarding disqualification of Munley/Mulcahey has significantly delayed Darrow's case. Nonetheless, we are compelled to disqualify Munley where disqualification is imperative to Appellant's right to "receive[] the fair trial that due process requires." *E.R.*, 129 A.3d at 526.

P.J.E. Stevens files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/14/2021</u>