J-S25022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LIVE NATION ENTERTAINMENT, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WEBER GALLAGHER SIMPSON | : | |
| STAPLETON FIRES & NEWBY, LLP, | : | |
| CHANGE 4 GOOD, INC., ERIC | : | No. 2361 EDA 2023 |
| BLUMENFELD, HOLY GHOST MET | : | |
| MASTER TENANT, LLC, DIVINE | : | |
| HOSPITALITY MET, LLC, HOLY | : | |
| GHOST HEADQUARTERS REVIVAL | : | |
| CENTER AT THE MET, INC., | : | |
| RAYMOND ANTHONY MOLOCK, LAFF | : | |
| OUT LOUD, INC., AND PATRICK J. | : | |
| STAPLETON | : | |
| | : | |
| | : | |
| APPEAL OF: ERIC BLUMENFELD, | : | |
| HOLY GHOST MET MASTER TENANT, | : | |
| LLC, DIVINE HOSPITALITY MET, LLC | : | |

Appeal from the Order Entered September 13, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  220300657

BEFORE:  DUBOW, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM PER CURIAM:                    **FILED NOVEMBER 14, 2024**

Eric Blumenfeld, Holy Ghost Met Master Tenant, LLC ("Met Master") and

Divine Hospitality Met, LLC ("Divine Hospitality") (collectively, "the Blumenfeld

Defendants") appeal from the order granting leave to Weber Gallagher

Simpson Stapleton Fires & Newby, LLP and Patrick J. Stapleton (collectively,

"the Weber Defendants") to disclose privileged documents relating to their

legal representation of the Blumenfeld Defendants. We reverse and remand.

The plaintiff, Live Nation Entertainment, Inc. ("Live Nation"), operates a live entertainment venue in the former Metropolitan Opera House referred to as "the Met." The trial court summarized the allegations Live Nation brought in its complaint as follows:

> [Live Nation alleged the defendants] engaged in a secret, wide-ranging, fraudulent and tortious conspiracy and scheme to divest [Live Nation] and its vendor of their valid and enforceable liquor license [at the Met], [and] to remove [Live Nation] from [the Met] so that [the Blumenfeld Defendants] would operate the Met in their place, all in an effort to take over [Live Nation's] business and improvements through fraud.
>
> [Live Nation] also alleged that [the Weber Defendants] breached their duties of loyalty and full disclosure and violated Pennsylvania Rule of Professional Conduct 1.7 requiring them to avoid conflicts of interest by: placing [the Blumenfeld Defendants'] interests above those of [Live Nation]; concealing and failing to disclose the scheme to divest [Live Nation] of its vendor's liquor license and thereby interfering with [Live Nation's] ability to operate the Met; submitting the fraudulent application before the [Pennsylvania Liquor Control Board ("PLCB")]; making patently false statements to the PLCB in furtherance of the plot; and through the other conduct set forth above.

Trial Court Opinion, 12/22/23, at 1-2 (quotation marks and footnotes omitted, format altered, some alterations in the original).

Essentially, Live Nation alleges that the Blumenfeld Defendants schemed to take over its operations at the Met. To effectuate this scheme, in March 2021, Met Master – one of Blumenfeld's companies, that leases the Met to Live Nation – wrongfully petitioned for and obtained a confessed judgment for ejectment against Live Nation for non-payment of rent. However, Live

Nation successfully petitioned the court to open the confessed judgment. The judgment was opened two months later, in May 2021.

Live Nation alleges that the following month, in June 2021, another company of Blumenfeld's, Divine Hospitality, entered an agreement with Met Master to lease the Met. Divine Hospitality also purchased a liquor license from a third party and applied to the PLCB to use that license at the Met. During the applications process, Divine Hospitality allegedly knowingly misrepresented to the PLCB that it was the sole tenant at the Met, that Live Nation was no longer permitted to operate at the Met because of the confessed judgment (which had since been opened), and that the liquor license held by Live Nation's concessions vendor was invalid. According to the complaint, the PLCB will only issue one liquor license for any given location.

According to Live Nation, the Weber Defendants represented Divine Hospitality when it applied for the transfer of the liquor license and filed the fraudulent application with the PLCB. Live Nation alleges that at the same time, the Weber Defendants legally represented Live Nation "in multiple premises liability matters," and previously represented Live Nation regarding its operations at other venues. Live Nation alleges the Weber Defendants failed to inform it that they had undertaken representation of the Blumenfeld Defendants or that Divine Hospitality had applied for a liquor license at the Met. **See** Complaint, filed 3/4/22, at ¶¶ 5, 26-30, 45-46, 48, 54, 56, 59-65.

In addition, Live Nation alleges that Met Master, in concert with other named defendants,[1] held for-profit events at the Met between June 2021 and February 2022, without its consent. These defendants used special occasion liquor permits they obtained from the PLCB without disclosing to the PLCB that there was an existing liquor license for the Met. Live Nations claims this violated both the terms of its lease with Met Master and liquor licensing laws, thereby jeopardizing the liquor license held by its concessions vendor. Live Nations alleges that the applications for the special occasion permits, while not filed by the Weber Defendants, "were the brainchild" of the Weber Defendants and Blumenfeld Defendants. *Id.* at ¶ 71.

Count I of the complaint requested a permanent injunction to prevent all defendants from making any attempt to invalidate Live Nation's vendor's liquor license or to seek any liquor license at the Met during the term of Live Nation's lease. It also sought to preclude them from hosting events at the Met in which liquor is sold or permitting liquor to be consumed at any event not hosted by Live Nation.

Count II, against Met Master, alleged abuse of process for wrongfully pursuing a confessed judgment in ejectment against Live Nation.

Counts III, IV, V, and VI were for tortious interference, unfair competition, conspiracy, and aiding and abetting tortious conduct. These

---

[1] The other parties listed in the caption as defendants (Change 4 Good, Inc., Holy Ghost Headquarters Revival Center at the Met, Inc., Raymond Anthony Molock, and Laff out Loud, Inc.), are not part of this appeal.

counts were against all defendants, including the Weber Defendants. These counts alleged the defendants interfered with Live Nation's contract with its concessions vendor, which requires it to hold a liquor license; harmed Live Nation's commercial relationships; conspired to commit unlawful acts; or rendered substantial assistance to those committing the foregoing.

Count VII was for breach of contract against Met Master and another defendant for hosting events at the Met that were prohibited by the lease and jeopardized the liquor license held by Live Nation's concessions vendor.

Count VIII, for "malpractice and breach of fiduciary duty," was against the Weber Defendants. It incorporated all preceding allegations in the complaint. It stated the Weber Defendants

> breached their duties of loyalty and full disclosure and violated Pennsylvania Rule of Professional Conduct 1.7 requiring the [Weber Defendants] to avoid conflicts of interest by: placing the [the Blumenfeld Defendants'] interests above those of Live Nation; concealing and failing to disclose the scheme to divest Live Nation of its vendor's liquor license and thereby interfering with Live Nation's ability to operate at the Met; submitting the fraudulent application before the PLCB; making patently false statements to the PLCB in furtherance of the plot; and through the other conduct set forth above.

*Id.* at ¶ 115. It also generally alleged the Weber Defendants deviated from the standard of care required of Pennsylvania attorneys.

The relief Live Nation requested for each count was "compensatory and punitive damages in an amount in excess of the statutory minimum for arbitration, plus judgment interest and such other and further relief as this Court deems just and appropriate." *See, e.g., id.* at ¶ 119.

- 5 -

The Blumenfeld Defendants filed preliminary objections.[2] The court issued an order sustaining the preliminary objections in part. It dismissed Counts III, IV, V, and VI to the extent that these counts were based on filing the complaint in confession of judgment in ejectment or the application to transfer the liquor license. The court held, "As the liquor license was not transferred and the application to transfer was withdrawn, [Live Nation] has not suffered any actual harm and the claims fail." Order, 9/15/22, at 1-2. It ruled, "As for the other conduct alleged by [Live Nation], the allegations of general damages are sufficient to state a claim." *Id.* at 2 n.1.

The Weber Defendants filed a motion for leave to disclose their privileged client file relating to their representation of the Blumenfeld Defendants. They asserted that Live Nation served them with a document request for the file, and that its disclosure was necessary for their defense against Live Nation's claims.[3]

The court entered an order instructing the Weber Defendants to produce all non-privileged documents in the Blumenfeld Defendants' client file and to deliver any privileged documents to chambers for *in camera* review. The

---

[2] According to the docket, Live Nation filed an answer to the preliminary objections on April 29, 2022. This document is not in the certified record, reproduced record, or supplemental reproduced record.

[3] Previously, the court granted the Blumenfeld Defendants' emergency motion to preclude the disclosure of the privileged documents. However, the court did so without prejudice to the Weber Defendants to "file a motion seeking to produce privileged documents if necessary to establish a defense to the claims set forth in the complaint as they exist following [the order deciding preliminary objections]." Order, 9/15/22, at 1.

Weber Defendants filed a responsive memorandum arguing that disclosure of the entire file, including all privileged communications, would be necessary to prove their defense.

The court held argument[4] and granted the motion.[5] It granted the Weber Defendants leave to produce "all of the documents contained in Binder No. 1 and Binder No. 2 concerning their representation of [Divine Hospitality's] application for a liquor license at [the Met]," finding that disclosure of those documents "reasonably necessary" for the Weber Defendants to establish their defense. Order, 9/13/23, at 1. It found that "document-by-document review of the documents in these binders is unnecessary in light of Rule of Professional Conduct 1.6(c)(4)'s exception to a lawyer's duty of confidentiality[.]" *Id.* In its Rule 1925(a) opinion, the court elaborated that it did not grant the Weber Defendants leave to disclose the entire client file, but only the contents of Binders Nos. 1 and 2 – which include the privileged communications surrounding the application for the liquor license – to prove the extent of their communications with the Blumenfeld Defendants regarding the license application:

> Here, this court relied on Pa.R.P.C. 1.6(c)(4) in granting the Motion for Leave to disclose [the] Weber Defendants' specific documents to [Live Nation]. This court did not order [the Weber Defendants] to produce the entire client file, only specific documents contained in Binder No. 1 and Binder No. 2. The

---

[4] The argument was not a matter of record. *See* Letter, 10/6/23.

[5] The court granted the motion based on the recommendation of the judge *pro tempore* that presided over the hearing.

documents were concerning the Weber Defendants' representation of the application for a liquor license at the premises. The production of the specific documents is necessary to demonstrate what information [the] Blumenfeld Defendants conveyed, as well as what it did not convey, to [the] Weber Defendants. The partial release of the specific documents creates doubt as to Weber Defendants are withholding damaging documents in their client file. In other words, the only means [the] Weber Defendants have of proving they were not part of [the Blumenfeld Defendants' alleged] scheme and making this defense is to show all the information they were provided by [the] Blumenfeld Defendants concerning their representation of the application for a liquor license.

Trial Ct. Op. at 4-5.

The Blumenfeld Defendants appealed.[6] They raise the following issues:

Is the Weber Defendants' professed belief that production of the Client File is necessary for them to establish a defense to Live Nation's sole remaining claim against them objectively reasonable?

Should the Trial Court have reviewed the documents at issue *in camera* to determine if their production is reasonably necessary for the Weber Defendants to establish a defense to Live Nation's sole remaining claim against them[?]

The Blumenfeld Defendants' Br. at 3 (trial court answers omitted).

The Blumenfeld Defendants argue that the trial court abused its discretion because Rule 1.6(c)(4) requires the disclosing attorney to reasonably believe that the disclosure of the confidential information is necessary for its own defense, and here, the Weber Defendants could not have reasonably held this belief. The Blumenfeld Defendants assert that the only

_____

[6] Divine Hospitality Group, LLC, while listed as an appellant on the notice of appeal, is a non-party to the below action. Following our issuance of a rule to show cause, and upon that entity's praecipe to do so, we discontinued the appeal as to Divine Hospitality Group, LLC.

remaining claim against the Weber Defendants is Count VIII, alleging they breached a fiduciary duty to Live Nation by engaging in a conflict of interest. Live Nation posits that, accordingly, the only defenses available to the Weber Defendants are (1) they did not represent Live Nation at the time of the events in question or (2) their representation of the Blumenfeld Defendants at the same time was not adverse to Live Nation. The Blumenfeld Defendants assert that the answers to either question would not be established by disclosure of the privileged communications with the Weber Defendants.

They also argue that the mere fact that the Weber Defendants applied for a liquor license to replace Live Nation's liquor license constituted a conflict of interest, regardless of whether the Weber Defendants made any misrepresentations in the application. They further argue that, even if the question of whether they informed the Weber Defendants that the confessed judgment had been opened was relevant, the absence of this information in the client file would not prove whether they disclosed that fact to the Weber Defendants, as they could have done so orally. They also argue that disclosure of their communications with the Weber Defendants would not prove whether the Weber Defendants were independently aware of the status of the confessed judgment — or should have been — as it was a matter of public record.

Second, the Blumenfeld Defendants argue the court should have conducted an *in camera* review to determine whether any of the privileged documents support a defense for the Weber Defendants. The Blumenfeld

Defendants contend it is not reasonable for an attorney to disclose her entire file, and the court should have acted as an "objective arbiter of reasonableness." The Blumenfeld Defendants' Br. at 20.

The Weber Defendants respond that disclosure of the file is necessary because it will establish

> that they did not (i) engage in any conflict of interest when they represented Divine Hospitality in pursuing its liquor license application; (ii) engage in any alleged fraudulent and tortious conspiracy or scheme to divest Live Nation of its liquor license at the Met; (iii) engage in any fraudulent and tortious conspiracy or scheme to harm Live Nation's business interests; (iv) knowingly submit a false liquor license application to the PLCB on behalf of Divine Hospitality; and (v) knowingly assist Divine Hospitality with taking action adverse to the interests of Live Nation.

The Weber Defendants' Br. at 29. The Weber Defendants assert that the claims against it are not limited to a conflict of interest, but include malpractice and breach of fiduciary duty, and that these claims are premised on allegations of wrongful and tortious conduct. The Weber Defendants also argue the Blumenfeld Defendants waived the issue of whether the court should have conducted an *in camera* review by failing to specifically request this from the trial court, and that is not required by Rule 1.6(c)(4).

"Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard." *McNeil v. Jordan*, 894 A.2d 1260, 1268 (Pa. 2006). However, "[w]hether the attorney-client privilege or the work product doctrine protects a communication from disclosure is a question of law." *Saint Luke's Hosp. of Bethlehem v. Vivian*, 99 A.3d 534, 540 (Pa.Super. 2014). We review questions of law under a *de novo* standard

- 10 -

and with a plenary scope. **McNeil v. Jordan**, 894 A.2d at 1268; **Saint Luke's Hosp. of Bethlehem**, 99 A.3d at 540.

Pennsylvania law provides that, in general, communications between attorneys and clients are privileged and not discoverable. **See** 42 Pa.C.S.A. § 5928 (defining privileged information as confidential communications made to an attorney by a client, and providing counsel is not permitted to testify to privileged information); Pa.R.C.P. 4003.1(a) (providing non-privileged documents relevant to the subject matter are discoverable). Attorney-client privilege "is founded upon a policy extrinsic to the protection of the fact-finding process. The intended beneficiary of this policy is not the individual client so much as the systematic administration of justice which depends on frank and open client-attorney communication." **Saint Luke's Hosp. of Bethlehem**, 99 A.3d at 550 (citation omitted).[7]

Here, the trial court relied on Pennsylvania Rule of Professional Conduct 1.6(c)(4). This rule states that a lawyer "shall not reveal information relating to representation of a client" without the client's consent, except "to the extent that the lawyer reasonably believes necessary. . . to establish a defense" to a claim against them "based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's

---

[7] **See also Brennan v. Brennan**, 422 A.2d 510, 514 (Pa.Super. 1980) (*en banc*) ("To permit the attorney to reveal to others what is so disclosed, would be not only a gross violation of a sacred trust upon his part, but it would utterly destroy and prevent the usefulness and benefits to be derived from professional assistance") (citation omitted).

representation of the client[.]" Pa.R.C.P. 1.6(a), (c)(4). The explanatory comment to the Rule explains that this self-defense exception applies to allegations by a third party that the lawyer and client committed wrongs in concert. *Id.* at Explanatory Comment, ¶ 14.

Rule 1.6 is an ethical rule that applies to confidential information obtained in relation to an attorney's representation of a client; it does not control whether certain materials are privileged or beyond the scope of discovery. *See Perelman v. Raymond G. Perelman Revocable Tr.*, 259 A.3d 1000, 1007-10 (Pa.Super. 2021) (differentiating between the ethical confidentiality provisions of Rule 1.6 and attorney-client privilege). Nonetheless, "when it is shown that the interests of the administration of justice can only be frustrated by the exercise of [attorney-client] privilege, the trial judge may require that the communication be disclosed." *Id.* at 1008 (citation omitted). While Rule 1.6(c)(4) is not controlling, this Court in *Perelman* concluded that it can "provide a justification for a lawyer's disclosure of client confidences," and a trial court may rely on it when allowing the production of privileged documents. *Id.* at 1010. The holder of any privilege waives the privilege by asserting a claim or defense in litigation and then attempting to prove that claim or defense by reference to the otherwise privileged material. *Commonwealth v. Harris*, 32 A.3d 243, 253 (Pa. 2011).

To assess whether disclosure of the privileged communications between the Weber Defendants and the Blumenfeld Defendants is necessary to establish a defense to the allegations against the Weber Defendants, we must

examine the counts against them that remained after the court decided the Blumenfeld Defendants' preliminary objections.

Count I is against all defendants, to enjoin them from making further attempts to obtain a liquor license at the Met or allowing liquor to be consumed at the Met at events not hosted by Live Nation. Live Nation requests the injunction "to avoid an injury that cannot be compensated through money damages." Compl. at ¶ 83. Whether Live Nation is entitled to injunctive relief designed to prevent future harm is not dependent on the past communications between the Blumenfeld Defendants and Weber Defendants.

Counts III through VI[8] are against all defendants, including the Weber Defendants, for tortious interference, unfair competition, conspiracy, and aiding and abetting tortious conduct. Regarding the Weber Defendants, the complaint alleges they assisted the Blumenfeld Defendants/Divine Hospitality in applying for a liquor license at the Met; knowingly made misrepresentations to the PLCB during that process; did not disclose these activities to Live Nation; and masterminded the applications for the special occasion permits that other parties used to host for-profit events at the Met that injured Live Nation's commercial relationships.

The court sustained the preliminary objections to these counts to the extent the claims are based Divine Hospitality's application to transfer a liquor license to the Met, because the license never transferred and Live Nation

---

[8] Counts II and VII do not name the Weber Defendants.

- 13 -

suffered no harm. However, the privileged documents at issue contain communications pertaining **only** to their representation of Divine Hospitality for its application for a liquor license. We fail to see how the contents of these documents are necessary to prove a defense to claims that have been dismissed on the basis that there were no damages alleged. Furthermore, the holder of the privilege has not put the privileged documents in issue here.

The court did not rule that Live Nation has failed to allege damages resulting from the other conduct in which the Weber Defendants were allegedly involved: *i.e.*, assisting other named defendants in applying for the special occasion permits. However, the court only ordered production of documents related to Divine Hospitality's application for a liquor license. It did not order disclosure of the entire client file, or any communications purportedly related to the applications for the special occasion permits. As the documents at issue do not pertain to these claims, their production would not provide a defense.

Count VIII is against the Weber Defendants specifically. This final count alleges the Weber Defendants breached two of their fiduciary duties to Live Nation – the duty of loyalty and the duty of disclosure – and engaged in a conflict of interest in violation of Rule of Professional Conduct 1.7.

We note Count VIII also generally alleges legal malpractice by the Weber Defendants. However, Live Nation has not alleged the Weber Defendants failed to adhere to the appropriate standard of care when representing Live Nation in its unrelated legal matters. Rather, Live Nation's malpractice claim

is wholly based on allegations that the Weber Defendants breached their fiduciary duties by assisting the Blumenfeld Defendants in pursuing the liquor license and the special occasion permits.[9]

We reiterate that the Rules of Professional Conduct are not substantive law, and a violation of the Rules does not, in and of itself, constitute legal malpractice. *In re Est. of Pedrick*, 482 A.2d 215, 217 (Pa. 1984). However, to the extent the Rules embody common law, such as the fiduciary duties an attorney owes to her clients, conduct which constitutes a violation of the Rules may be actionable. *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1284-85, 1288 (Pa. 1992).[10] Relevant here, common law imposes civil liability on attorneys who breach their fiduciary duty of undivided loyalty by engaging in conflicts of interest. *Id.* at 1285-86; *see also Dougherty v. Pepper Hamilton LLP*, 133 A.3d 792, 797-98 (Pa.Super. 2016) (discussing *Maritrans*).

To recover damages in a malpractice action premised on a breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary relationship with the defendant; (2) that the defendant negligently or intentionally failed to act in good faith and solely for the plaintiff's benefit; and (3) that this caused the plaintiff to suffer injury. *Marion v. Bryn Mawr Tr.*

---

[9] Live Nation has not alleged the Weber Defendants breached their duty of confidentiality when representing the Blumenfeld Defendants.

[10] The Rules may also inform the standard of care relevant to prove the breach of a fiduciary duty in a malpractice action in lieu of expert testimony. *See Rizzo v. Haines*, 555 A.2d 58, 67 (Pa. 1989).

***Co.***, 288 A.3d 76, 88 (Pa. 2023); ***see also Maritrans***, 602 A.2d at 1286 (citing actions for damages resulting from conflicts of interest where law firm usurped client's business opportunity and where law firm assisted in undercutting former client's business relationships).

As we found above, because the trial court ruled that Live Nation suffered no injury from the application for the liquor license, the disclosure of the privileged documents pertaining to that issue is unnecessary to defend against that claim. And, while Live Nation also alleges the Weber Defendants assisted other named defendants in obtaining special occasion permits, the documents at issue pertain only to the Weber Defendant's representation of Divine Hospitality in its application for a liquor license. Therefore, their disclosure would not exculpate the Weber Defendants against the other claims against them.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/14/2024